[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal from the Sex Offender Board of Review (SORB) brought pursuant to G.L. 1956 §§ 11-27.1 et seq., 11-37.1-12, 11-37.1-13, 11.37.1-14 and 11.37.1-16. The matter before the Court is the State's motion to affirm the level and nature of community notification assigned to the defendant by the SORB and the defendant's objection to said motion, as well as the defendant's motion to strike and dismiss the SORB's determination and level of community notification.
 Facts And Travel
On January 6, 2000, defendant pleaded nolo to four counts of first degree sexual assault with three different victims. The Court imposed a sentence of twenty years, six months to serve, nineteen and one-half years suspended. A forth incident involving the same conduct was not pursued by the State.
On November 7, 2003, defendant was again before the Court on a Rule 32F violation notice based on the underlying charge of "engaging pedestrians in conversation for the purpose of prostitution or other indecent acts." On February 9, 2004, defendant admitted violation.
On May 23, 2000, the SORB initially determined the defendant to be a "sexually violent predator" based on the following findings:
 • Use of threats and violence during the offense.
 • Offense was premeditated and calculated.
 • Persistent violent restraint during this offense despite victim resistance.
 • When arrested, offender had ski masks and other paraphernalia indicative of planned attacks and/or restraint.
 • Developed the relationship with the victims for the primary purpose of victimization.
 • Offender selected and/or targeted a significantly vulnerable victim.
 • Habitual pattern of sexual aggression.
 • He refuses to accept responsibility for the crimes.
 • No documentation of successful participation in sex offender treatment program.
This determination was challenged by the defendant. Pending a hearing, a change in the statute on sexually violent predators occurred and the State sought a remand to the SORB for redetermination based on the newly enacted legislation. The motion to remand was granted and after further review, the SORB modified its findings and determined the defendant to be a Level 3 (high level risk) to the community in accordance with §11-37.1-12. Upon receipt of notification of the risk level, defendant filed an application for review under § 11-37.1-13 and a hearing was scheduled in accordance with § 11-37.1-14.
Prior to the hearing, the Court conducted an in-camera review of all papers, documents and other materials that formed the basis for the determination of the level and manner of community notification and found that the State had presented a prima facie case. The defendant was permitted to present testimony from witnesses regarding the correctness of the level, nature and extent of the notification proposed by the SORB.
This hearing was held in July 2005 on the State's motion to affirm the findings of the SORB and the defendant's motion to strike and dismiss the SORB's determination.
 Discussion
The sexual offender registration and community notification statute (§ 11-37.1 et seq.) places the burden upon the State to present a prima facie case to justify the proposed level of risk to reoffend that a convicted sex offender poses to the community, as well as the manner of notification.
The statute defines what is meant by a prima facie case as one where "(1) a validated risk assessment tool has been used to determine the risk of reoffense and (2) reasonable means have been used to collect the information used in the validated assessment tool." The State introduced the risk assessment instrument used to assess the defendant called the Static 99. The Static 99 is a validated risk assessment tool designated to assist in the prevention of sexual and violent recidivism for sexual offenders. The recidivism estimates are group estimates based upon reconvictions and were derived from groups of individuals with certain characteristics. As such, these estimates do not directly correspond to the recidivism risk of an individual offender. The offender's risk may be higher or lower than the probabilities estimated in the Static 99 depending on other risk factors not measured by this instrument (Static 99 Coding Rules Revised 2003 Ex. 16 at 3-4.)
The defendant scored a 2 on the Static 99 risk assessment tool placing him in the low to moderate risk category to reoffend. (It is interesting to note that both the State and defendant used the same risk assessment tool and scored the defendant exactly the same.) The State and the defendant also reported additional factors taken into consideration influencing risk — the State recommending a higher risk to Level 3 and the defendant arguing a lower risk to Level 1. The consideration of "external factors" are recommended in the Static 99 Revised Coding Rules; "the Static 99 does not address all relevant risk factors for sexual offenders." (Static 99 Coding Rules Revised 2003 Ex. 16 at 3.) These external factors were obtained from various documents considered by the SORB, as well as from statements of the defendant and victims. These documents and statements were introduced as joint exhibits and reviewed by the Court in-camera.
The State also submitted a supplemental report (Ex. B) which they used to support the finding of the SORB that defendant's risk to reoffend was underrepresented by the Static 99 test result. While the test results alone would support a decision that the defendant was a moderate risk to reoffend, the Board found the defendant to be high risk or Level 3.
The external factors considered by the Board included defendant's use of a weapon; violence, threats and stranger abduction; multiple acts against victims in each criminal episode; planned, premeditated, calculated, or predatory offense; offenses against particularly vulnerable victims, such as the handicapped; and, a pattern of repetitive and compulsive sexually aggressive behavior involving separate incidents. Other external factors considered appear to be duplicitous as they are accounted for in the scope of the risk assessment instrument.
Defendant did not agree with SORB's determination. Upon receipt of notice of this classification, he challenged the Board's high risk assessment 3 despite the Static score showing a low to moderate risk of re-offending. He argued that based on his expert's findings, he should be classified as a Level 1 or low classification. He contended that the battery of tests administered, and other risk factors such as strong family support, sexual self-regulation and lack of antisocial traits supported his position.
As previously set forth, the procedure to be followed in objecting to the level of community notification is set forth in §§ 11-37.1-14,11-37.1-15 and 11-37.1-16 of the Rhode Island General Laws. The Court, after conducting an in-camera review of the reports of Dr. Seghorn and Dr. Wincze, tests administered, incident reports and determining reasonable means had been used to collect the information presented, permitted defendant to present expert testimony to persuade the Court that the Level 3 classification was incorrect.
Defendant presented Dr. Carol J. Ball, a licensed psychologist, who has testified as an expert on behalf of sex offenders in several states. She reviewed reports and tests of prior treatment providers as well as the Static 99 risk assessment tool and concluded that the defendant was "a man of limited intellectual abilities, who has a biologically based mood disorder but does not have a mental abnormality or personality disorder that would make it likely that he would engage in sexually violent offenses in the future." While she affirmed the defendant's Static 99's score at 2, she found that it overestimated defendant's risk. She testified that there were a number of variables that were predicators of recidivism and that the Static 99 alone "was not all of the story . . . there was more to it." One of the considerations of Dr. Ball was that during a period of "free time" — time between defendant's sentencing in 2000 and the present time, while the defendant was on probation, he was incident free and as a result, the Static 99 score should be "cut in half."
The Court also heard from Alan Feinstein, a clinical psychologist employed by the Department of Corrections. After reviewing reports of Doctors Wincze and Seghorn, he interviewed Mr. Germane. He concluded thatpredicated on treatment and monitoring of the defendant, he presented a low risk to reoffend. However, he opined that if the defendant was not getting treatment, risk of reoffending was significant.
The defendant's obligation is to persuade the Court that the level and manner of notification is not in compliance with Rhode Island General Laws or guidelines adopted pursuant to said law. Since our Court has had little opportunity to address this issue, guidance is sought from other jurisdictions. In the case of In the Matter of Registrant GB; Applicationfor Judicial Review of Notification and Tier Designation, 146 N.J. 62, 685
A.2d. 1252, the court stated:
 "In sum, we hold that a registrant is entitled to lodge three distinct challenges to his tier designation. First, a registrant may introduce evidence that the calculation that led to the Scale score was incorrectly performed either because of a factual error, because the registrant disputes a prior offense, because the variable factors were improperly determined, or for similar reasons. Second, a registrant may introduce evidence at the hearing that the Scale calculations do not properly encapsulate his specific case; or phrased differently, a registrant may maintain that his case falls outside the `heartland' of cases and, therefore, that he deserves to be placed in a tier other than that called for by the prosecutor's Scale score. Finally, a registrant may introduce evidence that the extent of notification called for by his tier categorization is excessive because of unique aspects of his case. Challenges to the Scale itself, or challenges to the weight afforded to any of the individual factors that comprise the Scale, are not permitted. Instead, all challenges must relate to the characteristics of the individual registrant and the shortcomings of the Scale in his particular case."
The Court finds in this matter that a valid risk assessment tool, Static 99, was used. Other variable factors (although treated differently for score results) were considered by the Board and listed in its supplemental report. (State's Exhibit B.) These factors were properly utilized in determining the Board's recommendation.
The defendant introduced no evidence that the extentof notification called for by his tier categorization was excessive because of unique aspects of his case. He did dispute a subsequent offense (32F violation) alleging this variable factor was improperly considered by the Board. Defendant relied on reports of Dr. Seghorn dated December 8, 1999 (State's Ex. 5) that concluded from a "public safety point of view defendant's risk of reoffense during treatment was low." However, Dr. Seghorn's conclusions were based on "assuming the truth of defendant's assertions" and noted a "life long negative self image and depression" which were exacerbated by problems with his wife. Dr. Wincze's report of December 10, 1999 noted his depression was more a reaction to his legal problems, and his contact with prostitutes a quick solution to his sexual problems. On August 19, 2001, (Ex. 14) he opined it was "highly unlikely he will repeat his offenses" and a low probability of repeat offenses. However, in a January 2004 report (Joint Ex. 15), after a repeat incident he found due to "no medication . . . therapy . . . unemployment . . . free time . . . and an emotional problem . . . he was overwhelmed . . . his solution was impulsive: poorly planned."
Defendant's expert, Dr. Carol J. Ball, attempted to show through her testimony that the Static 99 test overestimated defendant's risk. While she agreed with the SORB's score of 2, she felt the score should be cut in half due to the fact that defendant, while free in the community, was "incident free." When pressed regarding the violation occurring in 2003, she stated that she disregarded the incident because "there was no conviction." Dr. Ball did acknowledge that the Static 99 results were not all of the story and required more. While she stressed other factors such as family support, lack of antisocial traits and childhood criminal activity were positive factors, she appeared to disregard negatives such as a weapon (because it was not charged in the offense) and four distinct offenses (she treated them as one offense as is permitted in scoring the Static 99 results). She also testified that one of the risk factors she considered, sexual self regulation, demonstrated no lack of ability by the defendant to regulate his sexual impulses. This was despite Dr. Wincze's report after the November 2003 incident that his solution was impulsive.
Allen Feinstein, clinical psychologist, when asked for his opinion regarding defendant's risk of recidivism, stated it was "low," but qualified the opinion by testifying "if given appropriate treatment and monitoring." He acknowledged that defendant's risk of reoffending was significant if he was not monitored and/or receiving medication and treatment.
Both experts appeared to gloss over or ignore the incident in November of 2003 where defendant admitted to failing to keep the peace and be of good behavior by engaging in conduct similar to his original offense. The underlying charge which resulted in an admission to the Rule 32F violation was engaging pedestrians in conversation for the purpose of prostitution or other indecent acts. While it is accurate that no conviction occurred, the conduct was similar to conduct which resulted in defendant's original conviction. Furthermore, this conduct involved two handicapped girls and was similar to one of the assaults the defendant was charged with in 1998.
Dr. Ball did not consider the 2003 incident in rendering her opinion based on "lack of a conviction." The Court finds her reasoning faulty based on a review of Joint Exhibit 16 (Static 99 Coding Rules Revised — 2003 at page 16). The Coding Rules support the State's argument that this incident may be considered a new sexual offense resulting in an even higher score on the Static 99 assessment tool. Defendant's behavior could be considered a sexual offense if "the risk for recidivism was truly imminent" and the "offense failed to occur due to chance factors such as detection." The Static 99 risk assessment tool could score the defendant at a 4 or 5 or high risk thereby affirming the SORB's conclusion.
The Court's obligation in this matter is to affirm the determination of the level and nature of the community notification unless it is persuaded by a preponderance of the evidence that the determination on either the level of notification or the manner in which it is proposed is not in compliance with this chapter or the guidelines adopted pursuant to this chapter. Section11-37.1-16.
As stated in the matter of Doe v. Pritz, 142 N.J. 1,662 A.2d 367 (1995) "the ultimate determination of a registrants risk of reoffense and the scope of notification is reserved to the sound discretion of the trial court."
The Court has not been persuaded to reject or modify the risk level or nature of notification. The offenses pleaded to by the defendant are capital offenses and a review of the incident reports reflect more than defendant's contention of refusal of pay for services of a prostitute. Although he pleaded to three offenses, the Court reviewed reports of four separate offenses, one of which involved a handicapped female. Even if one were to "cluster" these offenses as a one-time event during a difficult period in his life, it would be impossible to overlook a similar incident which occurred while the defendant was on probation in 2003. This incident also involved two handicapped girls who were strangers that the defendant asked to "go out" or to "have a drink." Defendant's account of this event was totally lacking in credibility, and but for the mother of the two girls interceding, might have resulted in dire consequences for either or both of them.
 Conclusion Doe v. Pritz, supra and In re C.A., 146 N.J. 71,679 A.2d 1153 (1996) sets forth the non-delegable responsibilities of the court to ensure a proper balancing of the rights of registrants with the interests of the community. The Court must weigh all the facts and make a determination as to whether the defendant has met his burden of persuasion that the level of notification is not in compliance with the law. It is the finding of this Court that Defendant has not met this burden.
"The various tests given the defendant are not scientific devices. They are merely useful tools to help courts determine whether defendant's risk of reoffense is low, high or moderate." In re C.A., supra.
This Court is not to blindly follow the numerical calculations provided by tests but to enter the appropriate tier classification based on all of the evidence available.
Based on the foregoing, this Court finds that level and nature of community notification is justified and affirms the determination of the SORB. Counsel shall submit an appropriate order for entry.